COMMONWEALTH *vs.* JOHN D. WRIGHT & another.

Dukes County. November 21, 1892. — January 23, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Fugitive from Justice — Constitutional Law — Assault — Evidence — Officer — Arrest without Warrant — Possession of Short Lobsters with Intent to sell — Statute.*

A fugitive from justice, who has been surrendered by another State under the Const. U. S., Art. IV. § 2, cl. 2, upon a requisition from the Governor of this Commonwealth, may be tried here for an offence other than that specified in

the requisition, although committed before the fugitive was demanded, without first giving him a reasonable opportunity to return to the State from which he was extradited.

At the trial of an indictment for an assault upon A., committed while he was attempting to board the defendant's boat for the purpose of arresting him, and after he had said to the defendant, "I am a State officer, and am coming on board," A. may testify that, at the time of the assault, he was a district police officer and a deputy fish commissioner.

A district police officer and deputy fish commissioner has no authority to arrest without a warrant a person suspected of having in his possession short lobsters with intent to sell them.

FIELD, C. J. This is an indictment for an assault and battery. In the first count the defendants are charged with an assault and battery upon William H. Proctor, and in the second, with an assault and battery upon Peter Nelson. We infer that the defendants were found guilty upon both counts, although this does not appear in the papers before us. The exceptions recite: " At the trial it was claimed by the defendants, and admitted by the Commonwealth, (subject to all objections as to the competency of the evidence,) that the defendants were brought from Newport, in the State of Rhode Island, where they resided, to Edgartown, in said Dukes County, upon the requisition of the Governor of Massachusetts upon the Governor of Rhode Island, wherein they were charged with an assault with intent to kill upon the said Proctor and Nelson. The defendants claimed, and asked the court to rule, that they could not be tried upon the present indictment, but only for the offence for which they were extradited, and that they should be discharged. The court declined so to rule and to discharge the defendants, and ruled that the offer of proof was incompetent in bar of the prosecution of the defendants. The defendants objected, and excepted to the above ruling and refusal to rule." The copy of the complaint before the trial justice which has been sent to us, and on which the defendants were bound over for trial by the Superior Court, contains one count only, and it is for an assault with dangerous weapons upon William H. Proctor, with intent to kill and murder him, he being then a member of the district police, engaged in the execution of the duties of his office, as the defendants knew. There is no charge of an assault of any kind upon Nelson. We suppose that this is the complaint on which the requisition is founded, although the exceptions

recite that the assault described in the requisition was with
intent to kill "said Proctor and Nelson." We have not been
furnished with a copy of the requisition. An assault with a dan-
gerous weapon with intent to murder is punishable "by impris-
onment in the State Prison not exceeding twenty years"; Pub.
Sts. c. 202, § 23; it is, therefore, a felony. Pub. Sts. c. 210,
§ 1. A simple assault and battery is a misdemeanor. Upon an
indictment for an assault with intent to murder, a defendant can
be convicted of a simple assault, and it is conceded in this case
that both the indictment and the complaint were supported by
the same evidence, and were intended to include the same acts of
the defendants. If the complaint, however, contained no charge
of an assault upon Nelson, then the defendants have been tried
for an assault not included in the complaint. The contention of
the defendants is that they could not be tried for any other crime
committed before they were surrendered than that for which
they were demanded, according to the decision in *United States*
v. *Rauscher*, 119 U. S. 407, as no opportunity was afforded
them to return to Rhode Island after they were delivered up
on the requisition, except on their recognizance to appear in
the Superior Court, and to abide the order and sentence of that
court. The contention is that the law is the same in extradi-
tion between States of the United States as between the United
States and foreign nations. The first contention of the Attorney
General is, that, by proceeding to trial upon a plea of not guilty,
the defendants have waived any such defence. It is true that, if
the defendants were entitled to be discharged from arrest upon
the indictment under the rule of *United States* v. *Rauscher*, this
is not strictly a defence to the indictment. An indictment could
properly have been found against the defendants while they were
in the State of Rhode Island, and they could properly be tried
on this indictment at any time when they could be lawfully
arrested and held to answer to it. They might voluntarily come
within this Commonwealth and be arrested here, or be brought
here for trial by a requisition for the identical crime charged in
the indictment. The defendants could not be entitled to a ver-
dict and judgment of not guilty on this indictment because they
had been unlawfully held in arrest to answer to it, and thus be
thereafter free from any prosecution for the offence by pleading

this judgment in bar of another prosecution. If the facts and the law are as the defendants contend, they were entitled to be discharged from custody until they had had a reasonable opportunity to return to Rhode Island. This question, we think, could properly have been raised by a motion or petition to the court, and, if the facts were disputed by the Commonwealth, we think that it was for the court to find the facts. In some cases a special plea has been allowed, but it seems to us that in the nature of things it is not strictly a plea to the indictment, but an application to the court to be discharged from custody, which should be tried and determined by the court in much the same manner as a similar application on a writ of habeas corpus. See *United States* v. *Rauscher*, 119 U. S. 407 ; *Ex parte McKnight*, 28 N. E. Rep. 1034; *Blandford* v. *State*, 10 Tex. App. 627 ; *Commonwealth* v. *Hawes*, 13 Bush, 697. *State* v. *Vanderpool*, 39 Ohio St. 273. *United States* v. *Watts*, 8 Sawyer, 370.

We deem it unnecessary to determine, however, whether the defendants have seasonably and properly taken this objection, because we are of opinion that the law is not as the defendants contend.

The decision in the *United States* v. *Rauscher* rests upon the construction of the Treaty of 1842 between Great Britain and the United States, and of the statutes of the United States passed to carry into effect treaties or conventions of extradition with foreign countries, now found in the U. S. Rev. Sts. §§ 5270, 5272, and 5275. Before this decision the government of the United States had demanded of the government of Great Britain the extradition of Ezra D. Winslow, and the correspondence of the two governments had disclosed that they did not agree upon the construction to be put upon the Treaty of 1842. A full account of this discussion is found in Moore on Extradition, § 150. *et seq.*, and in Spear on Extradition, (2d ed.) 163.

The result of the controversy was that the United States refused to give any assurance to the British government that Winslow, if surrendered, would not be tried for other offences than those specified in the demand for extradition without first giving him an opportunity to return to Great Britain, and therefore Great Britain, in accordance with her own statutes concerning extradition, refused to surrender him. The crimes charged

against Winslow were not offences against the laws of the United States, but against the laws of the Commonwealth of Massachusetts. One ground on which the Secretary of State of the United States refused to give the assurance required by Great Britain was, that "neither the President, nor any officer of the Federal government, has power to control or to dismiss the prosecution in Winslow's case, or in any case where the offence is against the laws of one of the States, and could not give any stipulation or make any arrangement whatever as to the offences for which he should be tried when returned to the justice of the State against whose laws he may have offended." Moore on Extradition, § 150. The treaties of the United States, and the statutes of the United States passed to carry such treaties into effect, are the law of the land, and are binding upon all State courts, as well as upon the courts of the United States. If it were only a violation of good faith on the part of the United States to procure the extradition of fugitive criminals from a foreign country on a charge of one crime, and then to try them for another, this would not enable a criminal to procure his discharge by the courts as a matter of right; but the President of the United States, through the Attorney General of the United States, might, if he saw fit, direct a discontinuance of any such prosecution in the courts of the United States. It was however, to say the least, doubtful whether the President had any power whatever over prosecutions in State courts for offences against the laws of the State. It was thus possible for the State authorities to involve the government of the United States in serious controversies with foreign nations unless it was the law of the land that an alleged criminal surrendered by a foreign country, charged with one crime, could not be tried for another in any court without first having had an opportunity afforded him to return to the place from which he had been surrendered. This consideration had some weight with the Supreme Court of the United States in *United States* v. *Rauscher*. The principal grounds of the opinion of the majority of the court in that case were, that the Treaty of 1842 did not include all crimes, but only certain specified crimes; that no duty of delivering up fugitive criminals rests upon a foreign nation except by convention, and that the language of the treaty implied that criminals should not be surren-

dered except for the crimes specified; that the explicit language of § 5275 of the Revised Statutes of the United States, viz. that " the President shall have power to take all necessary measures for the transportation and safe keeping of such accused person, and for his security against lawless violence, until the final conclusion of his trial for the crimes or offences specified in the warrant of extradition, and until his final discharge from custody or imprisonment for or on account of such crimes or offences, and for a reasonable time thereafter," also implied that he was to be tried only for the specific offence for which he had been surrendered, unless he voluntarily remained within the United States; and that the modern practice of most foreign nations, and the opinion of the most recent text writers on international law, tended to support this view of the duty imposed by a treaty of extradition, and of the rights acquired by the accused under it and the statutes passed to carry such treaties into effect.

Upon the question whether the same rule should be applied to what has been called extradition between States of the United States under the Constitution of the United States, the decisions are not uniform, but the weight of authority seems to be that the rule is not applicable. *People* v. *Cross*, 135 N. Y. 536. *Ham* v. *State*, 4 Tex. App. 645. *State* v. *Stewart*, 60 Wis. 587. *Waterman* v. *State*, 116 Ind. 51. *Contra*, *State* v. *Hall*, 40 Kans. 338; *Ex parte McKnight*, 28 N. E. Rep. 1034. *In re Cannon*, 47 Mich. 481, and *Compton* v. *Wilder*, 40 Ohio St. 130, relate to an arrest on civil process of the person surrendered. This question has been elaborately discussed in Moore on Extradition, § 642 *et seq.*, and in Spear on Extradition, (2d ed.) 525 *et seq.*, and all the authorities up to the time of the publication of these books are there cited. These text writers reach opposite conclusions.

If the true construction of Art. IV. § 2, cl. 2, of the Constitution of the United States is that " the State having jurisdiction of the crime " cannot try the person delivered up for another crime than that for which he has been demanded, if committed before the demand was made, without it first gives him a reasonable opportunity to return to the State from which he has been demanded, then it is the law of the land, and the State courts must obey it. But this clause, we think, is not subject to any

such construction. The clause includes every crime in the State from which the person charged with crime has fled. This has been uniformly the construction put upon it by the courts. *Kentucky* v. *Dennison*, 24 How. 66. *Brown's case*, 112 Mass. 409. Even if this clause should be held to include only such crimes as were known to the common law, or to the States when the Constitution of the United States was adopted, it would include simple as well as aggravated assaults. At the time when the Constitution was adopted, the courts of England and of this country, so far as we are aware, tried all accused persons brought before them charged with crimes within their jurisdiction, without regard to the legality of the methods whereby the accused had been arrested and brought before the courts. Now, when a person who has committed a crime in one State, and has fled to another or to a foreign country, has been brought back by force and without right, it has been held that the courts cannot discharge him on his application. This, it is true, involves no federal question, but the cases are cited in *Ker* v. *Illinois*, 119 U. S. 437, and *Mahon* v. *Justice*, 127 U. S. 700. The decisions are that this is a matter for the executive departments of the governments, and not for the courts, and that if there has been a breach of good faith the criminal has thereby acquired no right to be discharged by the court. In *Kentucky* v. *Dennison*, it was decided that the clause of the Constitution we are considering was declaratory of a moral duty imposed on the States, and that there was no power in the courts of the United States to enforce it, or the statutes of the United States passed in pursuance of it.

A State ought undoubtedly to exercise good faith towards another State in proceedings under this clause, and it always is in the power of the prosecuting officers of a State to enter a *nolle prosequi* on an indictment against a criminal whose presence has been obtained in violation of law. In the present case, it may be said that, as the duty of the State of Rhode Island was to surrender the defendants if charged with any crime committed in Massachusetts, there seems to be no want of good faith in prosecuting them for the criminal offence included in the requisition, even although the evidence submitted to the grand jurors did not convince them that the defendant had committed the crime with the aggravations alleged in the complaint. If the

count in the indictment charging an assault upon Nelson is an additional offence, the evidence shows that it was a part of the same transaction alleged in the complaint. We find, however, nothing in the history of the insertion of this clause in the Constitution of the United States which tends to show that the doctrine contended for by these defendants was in the minds of those who framed the Constitution, or was considered by the people who adopted it. If we assume, notwithstanding the decision in *Kentucky* v. *Dennison, ubi supra,* that the statutes of the United States passed for the purpose of providing the methods whereby this clause of the Constitution may be carried into effect are to be considered in any proper sense as laws, there is nothing in them which purports to give to the person to be delivered up the right to return to the State where he was found before he can be tried for any other crime than that for which he was demanded, and it has not been contended that Congress by statute could add to or take from the rights and duties of the States under this clause of the Constitution. See U. S. Rev. Sts. §§ 5278, 5279.

If we turn to our own statutes on the subject, (Pub. Sts. c. 218, §§ 1–11,) we find there nothing which seems to limit the power of the courts of the Commonwealth, or which expressly or impliedly requires these courts to discharge from arrest criminals surrendered under this clause of the Constitution, if put on trial for other offences than the offence for which they were delivered up, unless an opportunity has been afforded them to return to the State where they were found. Under this clause of the Constitution, fugitive criminals from one State have no right of asylum in another State, whether the crime be political or non-political, whatever its nature or degree; and the reasons which influenced the Supreme Court of the United States in the decision of *United States* v. *Rauscher* seem to have little application to the rendition of fugitives from justice by one State to another under the Constitution. We doubt, moreover, whether the doctrines of international law which that court invoked in that case were recognized as a part of the duty of nations towards each other when the Constitution of the United States was adopted. However that may be, we are of opinion that the Constitution makes it the duty of one State to surrender fugitives

from justice when charged with any crime committed in another State, and imposes no limitation upon the right of the State to which they are surrendered to try them when surrendered for other offences than those specified in the requisition, although the offences were committed before the fugitives were demanded.

The crime which the defendants were suspected of having committed when Proctor went on board their sloop, as we understand the exceptions, was having in their possession what are called short lobsters, with intent to sell them. See Pub. Sts. c. 91, § 84; St. 1884, c. 212, § 1; St. 1887, c. 314. No question is made that the place where the sloop was lying and the place where the traps were found were within the town of Gosnold in this Commonwealth. The special statutory authority of the Commissioners of Inland Fisheries, or their deputies, and of the members of the district police, to enforce the provisions of the statutes we have cited, is found in St. 1884, c. 212, §§ 3, 4; St. 1885, c. 256, § 1; St. 1888, c. 389, § 2. The manner of the appointment of the district police, and their general powers, are shown in Pub. Sts. c. 103, §§ 1, 2. See St. 1885, c. 131; St. 1887, c. 256; St. 1888, cc. 113, 389, 426, § 13; St. 1891, cc. 302, 357, § 6. In general, the district police have " all the powers of constables (except the service of civil process), police officers, and watchmen." Pub. Sts. c. 103, § 2. The Commissioners on Inland Fisheries are appointed by the Governor, by and with the consent of the Council, and they may act personally or by deputy. Pub. Sts. c. 91, §§ 2, 3. The deputies, as we understand, are appointed by the commissioners, as deputy sheriffs are appointed by the sheriff.

William H. Proctor was allowed to testify, against the defendants' objection, that he was, at the time of the assault, a district police officer and a deputy fish commissioner. We think that the evidence was competent. Whether standing alone, without evidence that he had previously publicly performed the duties of each of these offices, it would be sufficient to warrant the jury in finding that he actually held these offices by legal appointment, is a question, we think, not raised by the exceptions. *Commonwealth* v. *Kane,* 108 Mass. 423. *Commonwealth* v. *Tobin,* 108 Mass. 426. Greenl. on Ev. §§ 83, 92. There was perhaps evidence that the defendants knew or believed

that Proctor was an officer engaged in enforcing the laws relating to lobsters, and that for this reason they sought to avoid him, even before he stated, " I am a State officer, and am coming on board." The defendants were not indicted for an assault upon an officer, but if Proctor was an officer, and the defendants knew it, and if he had the right to arrest them without a warrant, they lawfully could make no resistance to the arrest. If Proctor was not an officer, or if, being an officer, he had no right to arrest the defendants without a warrant, they could use reasonable force in preventing an arrest. It is conceded that Proctor did not have a warrant, and that he testified that, when he went on board the sloop, he intended to arrest the defendants. It has been argued that Proctor, either as deputy fish commissioner or district police officer, or both, had a right to search the sloop for lobsters, under St. of 1885, c. 256. The counsel for the defendants argues that this provision concerning the right of search is unconstitutional. It appears, however, that Proctor did not go on board the sloop for the purpose of searching for lobsters, but of arresting the defendants; and it does not appear that he represented to the defendants that he boarded the sloop to search for lobsters. We think, therefore, that this provision of the statutes cannot be invoked for his protection, and that it is unnecessary to consider it.

At the argument in this court, the counsel for the defendants waived the contention that the statute was unconstitutional which makes the possession of short lobsters with intent to sell them a crime. His principal contention was, that, even if the jury found that the defendants were in possession of short lobsters with intent to sell them, Proctor either as deputy fish commissioner or as district police officer had no right to arrest them without a warrant. There is no statute authorizing such an arrest, for we do not consider St. 1885, c. 220, § 6, as applicable to the case. It is suggested that the statutory misdemeanor of having in one's possession short lobsters with intent to sell them is a continuing offence, which is being committed while such possession continues, and that therefore an officer who sees any person in possession of such lobsters with intent to sell them can arrest such person without a warrant, as for a misdemeanor committed in his presence. We are of

opinion, however, that for statutory misdemeanors of this kind, not amounting to a breach of the peace, there is no authority in an officer to arrest without a warrant, unless it is given by statute. *McLennon* v. *Richardson*, 15 Gray, 74. *Commonwealth* v. *O'Connor*, 7 Allen, 583. *Scott* v. *Eldridge*, 154 Mass. 25. *People* v. *McLean*, 68 Mich. 480. 1 Bennett & Heard's Leading Cas. 201. 1 Bish. Crim. Proc. (3d ed.) §§ 166–183. *Commonwealth* v. *Tobin*, 108 Mass. 426. The Legislature has often empowered officers to arrest without a warrant for similar offences, which perhaps tends to show that, in its opinion, no such right exists at common law. See, for example, St. 1886, c. 276, § 8; Pub. Sts. c. 100, § 43; c. 203, §§ 100, 104; c. 207, §§ 41 and 43. If Proctor had no right to arrest the defendants without a warrant, and he boarded the sloop for that purpose, he was a trespasser, and the question for the jury would be whether the defendants used excessive force in defending themselves and their property. *Commonwealth* v. *Clark*, 2 Met. 23. *Brown* v. *Gordon*, 1 Gray, 182. *Commonwealth* v. *Cooley*, 6 Gray, 350. The court should have ruled that Proctor, even if he held the offices he claimed to hold, had no authority, under the circumstances shown, to arrest the defendants without a warrant.

*Exceptions sustained.**

*J. W. Cummings*, for the defendants.

*G. C. Travis*, First Assistant Attorney General, for the Commonwealth.

---

* See *Lascelles* v. *Georgia*, 13 U. S. Sup. Ct. Rep. 687.