Case 112.—ACTION BY JAMES RICH AGAINST ED BAILEY
AND OTHERS FOR FALSE ARREST AND IMPRISON-
MENT.—Nov. 27.

## Rich v. Bailey, etc.

## Appeal from Monroe Circuit Court.

## H. C. BAKER, Circuit Judge.

Judgment for defendants.    Plaintiff appeals.
Affirmed.

1. Religious Assembly—Protection From Disturbance—A relig-
ious society is as much entitled to the possession of its prem-
ises in peace, and free from molestation by riotous intruders,
as any one of them would be to defend his own house from
similar invasion.   And they would have the right to eject
boisterous, drunken or other misbehaving intruders, whose
presence and purpose was to annoy and disturb the assembly.
2. Same—Arresting Intruders—Necessary Force—Liability for
Damages—Where a religious society was holding a meeting
at its church house in the country, and the officers of the
society appointed two members of the congregation to pre-
serve order and protect the meetings from annoyance by in-
truders, the persons appointed had the right to arrest and
detain one whom they found selling whisky in the woods on
adjacent premises, and while they used no more force than
was necessary to make the arrest or to remove the intruder
from the premises, they would not be liable to such an in-
truder in an action for damages for false arrest.
3. Action—False Arrest—Plea of Justification—Burden of Proof
—In an action for unlawful arrest, which the defendants ad-
mit, and justify in the pleadings, the defendants are entitled
to the opening in the introduction of evidence and to close in
the argument.

BAIRD & RICHARDSON and J. C. CARLES for appellant.

### SUGGESTIONS AND AUTHORITIES.

1.   Burden of proof was on the appellant and the Court erred
in holding it was on the appellees and in giving the concluding
argument to them. (Civil Code of Practice, sec. 525-6; Lucus
v. Hunt, 91 Ky., 279).

2. The defendants did not aver in their answer that they "had authority or excuse for arresting plaintiff, and the issue was simply whether, in fact, they did restrain him of his liberty, which act, if done, was, of course, unlawful."

The court erred in permitting the defendants to plead in justification and in mitigation of damages, the meetings, acts and doings of the officers of the church and the congregation. (Miller v. Ashcraft, 98 Ky., 315; Glazae v. Hubbard, 19 R., 1025).

3. In this action, "the unlawfulness of the detention is the gravamen of the offense, hence it may be committed without malice on the part of the person causing the detention, consequently the question of malice is immaterial, except as it may affect the question of damages." (Reynolds by etc., v. Price, 22 R., 5; American & Eng. Ency., p. 661-663).

4. The appellees were not peace officers, and the appellant had committed neither a misdemeanor nor a felony, consequently they are liable to appellant, though their motives actuating them may not have been improper or corrupt, and it was error for the Court to refuse to so instruct the jury. (Glazae v. Hubbard, 19 R., 1025).

5. The officers of the church had no right or authority to direct the appellees to arrest and detain the appellant and having advised and caused the arrest of appellant, they too were jointly liable with the appellees to the appellant for the damages resulting therefrom. This being true, 'the appellees are not entitled to rely on the acts and doings of their joint trespassers as a defense, nor in mitigation of damages.

6. "A private person may make an arrest 'when he has reasonable grounds for believing that the person arrested has committed a felony." (Criminal Code, sec. 37; Southern Ry. in Ky. v. Shirley, 28 R., 860).

7. By the letter and spirit of the supreme law of the land, "no freeman shall be taken or imprisoned, * * * but by the lawful judgment of his peers, or by the law of the land."

8. The Court erred in permitting appellees' witnesses to detail what they had seen and heard; what the elders and deacons of the Church had done when appellant was not present, for more than one week prior to his arrest by appellees.

9. The law as embraced by the instructions of the court is not supported by the evidence nor authorized by any law, except "The Blue Laws."

10. Neither the fear of, nor the love for the Church, should be permitted to defeat the law in a court of justice.

11. "When it appears from the bill that instructions were given by the court on its own motion, or for the plaintiff and then for

Rich v. Bailey, etc.

the defendant, or at the instance of the one party or the other, and then instructions by the court, the bill, so far as the instructions are concerned, will be regarded as complete, unless it appears on the face of the record that other instructions were given or refused." Bill of exceptions in this case is complete, under this rule. (Southern Ry. in Ky. 'v. Shirley, 28 Ky. Law Rep., 860; Garrott v. Ratliff, 83 Ky., 384; L. & N. R. R. Co. v. Tinsley, 86 Ky., 297).

W. L. PORTER, GEORGE T. DUFF and JOHN C. HUTCHERSON for appellees.

## POINTS AND AUTHORITIES.

1. The persons intrusted with the care and management of a meeting, or assembly, may preserve order, and use such force as is necessary to remove a person who is disturbing it. (A. and E. E. Law, vol. 9, page 675, 7 Ind., 528; Mattock ads. McLean; Wall v. Lee, 34 N. Y., 142; Commonwealth v. Sigman, 3 Pa., S. R., 255).

2. Persons acting under authority of authorized agents of a church whose duty it is to preserve order therein, may remove disturbers of a congregation, assembled awaiting commencement of services. (U. S. v. Brooks, 4 Cranch, U. S. R., 429; Reed v. Inglis, 12 U. S. C. R., 191).

3. Any one without a warrant may lawfully lay hands upon another to prevent a breach of public decorum, as to turn him out of a church, and thus prevent him from disturbing the congregation, or a funeral ceremony. (Hall v. Planer, 1 Lev., 196; Glover v. Hughes, 1 Mod., 3 vol.; Waits A. and D., p. 314).

4. A religious society has the right to prescribe such rules as they may think proper for preserving the peace, or order, when met for public worship, and may use necessary force to remove a person wilfully violating such rule. (McClain v. Maddock, 7 Ind., 525; Beckett v. Lawrence, 7 Abbot (N. Y. B, 403; Wait's Actions and Defenses, vol 2, p. 264).

5. In a civil action defendant may set up matter tending to present a history of the behavior and conduct of plaintiff prior to and at the time of arrest, for the purpose of mitigation, and for the purpose of meeting allegation that defendant acted maliciously in removing plaintiff. (Beckett v. Lawrence, 7 Abb. (N. Y.), 405).

6. Any person guilty of riotous, violent, or indecent behavior in any church, or in any church yard or burial place, or who molests or disturbs, or troubles divine service may be arrested. (Addison on Torts, 2 vol., p. 23).

OPINION BY JUDGE O'REAR—Affirming.

Appellees were appointed by the officers of the Beech Grove Church, which was situated in Turkey Neck Bend of the Cumberland river in a remote part of Monroe county, to help them maintain the peace and order of a meeting being conducted at that church. The meeting had been in progress for some days, and had attracted a large number of people. The assemblage was for the purpose of worshiping God, and was being conducted by a religious society. A number of persons had been coming to the meeting place drunk and disorderly: They brought whisky with them, which they sold or gave away to others, greatly disturbing the meeting, and the peace and quiet of those who congregated there for religious worship. It was to break up those ill practices that the officers of the church took measures into their hands to find out who was bringing the liquors to the grounds and disposing of them to the disturbance of the meeting. There seem to have been no peace officers present or accessible. Appellant attended the meeting, and in company with two notorious characters, who had been more or less active in their disturbance of the congregation, went into the bushes a short distance from the meeting house, where some whisky had been hidden. Appellees followed them, and found them in the act of taking the whisky, evidently intending to appropriate it to their own use, and to give it or sell it to others upon the grounds. In fact (the proof conduces to show that appellant bought this whisky from his associates Coe and Summers. Appellant was apprehended as he went behind the bush to get the whisky, which was contained in a bottle. He was requested to go with appellees before the officers of the church at a spring near by, but refused, whereupon appellees took charge of him, and required him to accompany them and to give up his whisky, or to take

it away from the grounds.  Upon his agreeing not to part with it to any one else, nor to drink it himself, he was left alone with it, and remained the balance of the day at the meeting.  It is for this arrest that he sued appellees for false arrest and imprisonment. Appellees justify their arrest of appellant upon the ground that they as members of the congregation were deputed by the officers of the church to preserve the peace upon the grounds, and to prevent a disturbance of the congregation by those who were violating the law, or were about to violate it.

The jury found for appellees, the defendants, under the following instructions:  "(1) The court instructs the jury that any detention of a person by another with force, or against the will of the one detained, is imprisonment in law, and, where it is without right, it is unlawful. (2) The jury are further instructed that the officers of the church at Beach Grove had the right to adopt reasonable precaution to have and preserve order on the church grounds while the congregation was assembled for worship, and had the right to engage the service of the defendants to assist them for that purpose, and defendants had the right, acting in said service in good faith, and using no more force than was necessary, to temporarily restrain any person creating a disturbance or doing an act calculated to lead to disturbance on the grounds; and a temporary restraint under such conditions would not be unlawful. (3) The court instructs the jury to find for the plaintiff, unless they believe from the evidence that he was arrested and detained by defendants under the condition as stated in instruction No. 2, and, in the event they so believe, they will find for defendants. (4) If the jury find for the plaintiff, they will assess his damages at such sum as they may believe from the evidence will reasonably compensate him for the injury received, including wounded feelings,

mortification, and humiliation, if any, and if they believe from the evidence, the arrest and detention were malicious, they may find punitive damages.''

It is contended by appellant that the arrest was illegal and unauthorized. Section 35 of the Criminal Code of Practice provides that an arrest may be made by a peace officer or by a private person. Section 37 provides: ''A private person may make an arrest, when he has reasonable grounds for believing that the person arrested has committed a felony.'' No other provision of the Code is made for an arrest by a private person. An officer may make an arrest under a warrant directing him to do so, or when he has reasonable grounds for believing that the person arrested has committed a felony, or when a breach of the peace or other misdemeanor has been committed in his presence. Technically, any detention of the person of another by the laying on of hands, or by the exercise of force or threats may be an arrest. At the common law, a private person might make an arrest for breach of the peace, or a misdemeanor committed in his presence, as well as an officer. Commonwealth v. Wright, 158 Mass. 149, 33 N. E. 82, 19 L. R. A. 206, 35 Am. St. Rep. 475; 3 Cyc. 885. This has, however, been changed by statute in this state. But, when this is said, it must be understood as applying to mere interference with the affairs of the public alone. For instance, one who is assaulted may defend himself. He is not restricted in his self-defense to striking back; but, if it is necessary to avert the assault, he may catch hold of and restrain his assailant. That is an arrest, but is not a violation of the law. It is privileged under the greater law of self-defense. So, one may defend his own property. If to do so it becomes necessary to eject an intruder or trespasser, he may use such force as may be reasonably necessary to accomplish the purpose after peaceable means have

proven unavailing, even though to do so he should
take hold of the person of the trespasser, putting him
in restraint, and taking him into temporary custody.
Should the trespasser attempt to return, the tenant
of the premises might legally restrain his doing so
by repelling the attempted re-entry by such force as
was necessary, and no more; that is, he might take
hold of him, restrain him, turn him about, and require
him to depart.  So, one would have a right to defend
his own property from destruction by a trespasser,
even though to do so he might have to lay hold of
the person of the trespasser to restrain him by the
use of physical force.  What one might lawfully do
in the defense of his own premises, a number may
do in defense of their joint property.  A religious
society is as much entitled to possession of its prem-
ises in peace and free from molestation by riotous
intruders as any one of them would be to defend his
own home from similar invasion.  So they would
have a right to eject boisterous, riotous, drunken, or
other misbehaving intruders, whose presence and pur-
pose was to annoy and disturb the assembly in its
lawful pursuits.  It was said in Look v. Deen, 108
Mass. 116, 11 Am. Rep. 327: "The right which every
citizen has to enjoy personal liberty is necessarily sub-
ject to some exceptions.  Among them are the right
to restrain a person who is fighting, or doing mis-
chief, or disturbing a congregation, or has fallen in a
fit, or is so sick as to be helpless, or is unconsciously
going into great danger, or is drunk, or has delirium
tremens, or is so insane as to be dangerous to him-
self or others.  In such cases the right to restrain
persons has its foundation in the reasonable necessity
and ceases with the necessity."  The statutes of this
State (section 1267) make it a misdemeanor for any
person to willfully interrupt or disturb a congrega-
tion assembled for or engaged in the worship of God.

Section 1305, Ky. St. 1903, makes it a misdemeanor
for any person to vend or buy within one mile of
any church, meeting house, or any other place of pub-
lic worship, during divine services, any wine or spirit-
uous liquor, or mixture thereof, to be drunk, or which
shall be drunk, within that distance of such worship,
except in houses authorized by law.

The situation presented by the case at bar was
this: A congregation of people gathered in a remote
locality, engaged in the most peaceful of pursuits,
one guaranteed to them not only by the Constitution
of the State, but in the very Bill of Rights which ap-
pellant complains was violation by depriving him of
his liberty, is being disturbed by persons engaged in
a violation of the two sections of the statutes cited
above. The use of their religious house and grounds
is valueless to this society unless they can occupy
them in peace. The guaranty of the Constitution is
practically meaningless unless those engaged in re-
ligious worship shall have it in their power right-
fully to eject intruders who are violating the law
and the rights of the worshipers, as well as to pre-
vent such violation being committed. If a meeting
house is situated upon a public highway, for example,
and the disturber chooses to practice his unlawful
arts just outside of the door, but not upon the prem-
ises of the society, whereby the peace and decorum
of the meeting are disturbed and the statute violated
in every sense of its letter and spirit, can it be main-
tained that the right of the owners of the property to
repress such an invasion of their liberties is to be
checkmated by an appeal of the lawbreaker to the
Constitution, which protects every citizen in immun-
ity from unlawful arrest? Is it an unlawful arrest
when no more force is used than is necessary to check
the intruder? The invasion may be physical; or it
may be acts committed adjacent to the church, as

by indulging in obscene language, or indecent expos-
ure of the person, firing off pistols, or the like, as ef-
fectually destroying the peace of the congregation as
if it were committed actually upon its premises. Is
the vendor of the whisky, whether in a blind tiger,
or by the bootleg process, to evade all restraint upon
his disturbing the meeting merely because he chooses
to conduct his business just over the property
line of the church? If it be said that he can be pun-
ished for his misconduct, it must be answered that
the law is as much concerned in the preventing as
in the punishing of the disturbance of religious wor-
ship. In truth, the punishment is primarily to pre-
vent future recurrences of like incidents. Whoever
undertakes to execute the delicate privilege of arrest-
ing an intruder, and ejecting him under the circum-
stances herein outlined, must, of necessity, take the
responsibility of acting safely within his rights at
his own peril. But, when the property owner is with-
in his rights, the complaint of the violator of the law
that he has been illegally arrested, when he has been
merely prevented from further violating the law and
the private rights of the owner, is a claim without
merit either in law or argument. The answer in this
case justified the arrest, admitting it. This placed
the burden of the whole case upon the defendants.
As was stated in Reynolds v. Price, 56 S. W. 502, 22
Ky. Law Rep. 5, "The unlawfulness of the detention
is the gravamen of the offense, hence it may be com-
mitted on the part of the person causing the deten-
tion. Consequently the question of malice is im-
material except as it may affect the question of dam-
ages." As the arrest was admitted, and was justified
in the pleading, the defendants were entitled to the
opening in the introduction of evidence and to close
in the argument of the case.

The proceedings are without prejudicial error, and
the judgment is affirmed.