## Court of Appeals.

*October,* 1892.

*(Affirming* 8 *N. Y. Crim. Rep.* 421.)

## PEOPLE EX REL. POST *v.* CROSS.

### INTERSTATE EXTRADITION.

The obligation of the states of the Union to surrender to each other persons charged with crime is not founded upon comity or treaty, but upon the plain provisions of section 2 of article 4 of the Constitution of the United States, which embraces all crimes.

Where a person has been extradited he may be indicted and tried for an offense other than the one upon which he was extradited, when the acts set forth in the indictment upon which his extradition was based and the indictment upon which he is tried are identical.

In the present case it was held proper to indict and try for robbery a person extradited upon a charge of larceny, when the two charges arose from the same identical acts.

Appeal by relator, George W. Post, from an order of the supreme court, in the third department, affirming an order made at Supreme Court Chambers in Albany county dismissing a writ of *habeas corpus* and remanding relator to the custody of the respondent, the sheriff of Albany county.

The opinion of the general term appears *ante,* page 421.

The facts appear in the opinion of the court of appeals.

*Jno. H. Gleason,* for relator, appellant.

*Jas. W. Eaton,* district attorney, for the respondent.

O'BRIEN, J.—The relator, George W. Post, in his petition, alleges that he is unlawfully restrained of his liberty and imprisoned in the county jail of the county of Albany by the sheriff. Upon his application a writ of *habeas corpus* was issued to inquire into the cause of the imprisonment, and having been served upon the sheriff, in whose custody the relator was, a return was made thereto, in substance, that the relator was held by him in custody, as such sheriff, by virtue of a bench-warrant issued and delivered to him by the district attorney of the county of Albany, upon an indictment duly found in the court of oyer and terminer, whereby the relator was charged with the crime of robbery in the first degree. To this return the relator answered, denying that the imprisonment was legal, as alleged by the sheriff, and also set forth the following facts as constituting the true cause of the detention :

That in February, 1889, the relator was indicted in the court of sessions of Albany county for the crime of grand larceny in the first degree. That afterwards, and in October, 1891, when the relator was a resident and inhabitant of the state of Wisconsin, and sojourning therein, he was arrested upon a warrant issued by the governor of that state, upon the requisition of the governor of New York, in which requisition it was stated that the relator stood charged upon an indictment in the state of New York with the crime of grand larceny in the first degree, committed in the county of Albany, and that the relator had fled from the state having jurisdiction of the crime charged, and had taken refuge in the state of Wisconsin, and demanding the return of the relator pursuant to the Constitution and laws of the United States. That, after such arrest, upon the war-

rant of the governor of Wisconsin, the relator was delivered to an agent appointed by the governor of New York for that purpose, and conveyed to Albany for trial upon the indictment. That afterwards he was arraigned upon the indictment, and pleaded not guilty, and committed to the custody of the sheriff, by whom he was held and imprisoned till about the 21st of April, 1892, when the indictment for grand larceny in the first degree, upon which the relator was arrested in Wisconsin, was set aside and quashed. That on the same day the district attorney issued a bench-warrant to the sheriff upon the indictment for robbery, which was found subsequent to his extradition from Wisconsin, and that, by virtue of that warrant alone, the relator was detained in custody at the time of his application for the writ of *habeas corpus*. The district attorney admitted the facts stated in the answer or traverse of the relator to the return, except some immaterial allegations with reference to the first indictment, and, upon what was virtually a demurrer to the relator's traverse, the question was submitted to the judge before whom the writ was made returnable, who dismissed it and denied the prayer of the petitioner and remanded him to the custody of the sheriff. This order has been affirmed at the general term. It was admitted in the courts below, and is here, that the relator is held in custody for the same criminal act which constituted the ground of the requisition by the governor of this state upon the governor of Wisconsin, and of his extradition from that state. In the warrant of the governor of Wisconsin, and in the requisition of the governor of this state, that act was designated as grand larceny in the first degree, while in the indictment and warrant under which the relator was held when he applied for the writ of *habeas corpus* it was designated as the crime of robbery in the first degree, and the question is whether a fugitive from justice, surrendered to the authorities of the state upon their

demand, pursuant to the Constitution and laws of the United States, by the governor of another state, can be held or tried here for any other crime than that charged in the warrant by virtue of which he was arrested and surrendered in the state to which he had fled, although the act for which he was extradited and that for which he is now indicted and held in this state are the same. The obligation of independent nations to surrender fugitives from justice to each other, when demanded, rests either upon international comity or the stipulations of express treaty. When upon the former, there is and can be no general rule as to the duty of the government upon which the demand is made, save its own sense of justice and regard for what is due to its neighbors. When upon the latter, the obligation is discharged by the surrender of persons properly charged with the specific offenses provided for in the treaty. Whether fugitives from justice, extradited from foreign countries for offenses against the United States or any of the states, could be tried when brought within the proper jurisdiction for any offense except that charged in the papers upon which the accused was surrendered by the foreign government, was, until quite recently, a question that produced much conflict of judicial authority. The supreme court of the United States has settled the question, so far as concerns the obligations due to foreign nations, or to persons surrendered by them, upon the demand of the federal government pursuant to treaty stipulations (United States v. Rauscher, 119 U. S. 407). In that case it appeared that Rauscher was surrendered by the government of Great Britain to United States, upon its demand, for murder committed upon the high seas, an offense of which its courts had jurisdiction, and that he was subsequently tried and convicted of another and minor offense, namely, the cruel and inhuman punishment of the same seaman, and

thus the act for which he was extradited and tried was the same.

It is argued by the learned counsel for the relator that this is a controlling authority in the case at bar. But we think that there is a material distinction between the facts and circumstances of that case and those disclosed by the record before us. It must be noted in the first place that much stress was laid in that decision, and very properly, upon the fact that by the act of Congress relating to extradition from foreign nations upon the application of the federal government, it is expressly provided that the person surrendered shall not, when brought to this country, be tried for any other or different offense. This is the construction given to the act in the case last cited (119 *U. S.,* p. 433 ; *U. S. Rev. Stat.* sec. 5275). The act of Congress, passed in pursuance of the federal Constitution, is the supreme law of the land, and this law protected Rauscher from trial for any other offense than the one upon which he was surrendered to this government by the British authorities. Moreover, the laws of Great Britain, from which jurisdiction the fugitive had been extradited, forbid the surrender by that government of persons charged with crime in other jurisdictions to countries under whose laws the person demanded was liable to be tried for some other or different offense than that charged in the application for extradition (33 and 34 Vict. ch. 52; Adriance *v.* Lagrave, 59 *N. Y.* 115). And, therefore, when the United States took the fugitive from the protection of these laws, its faith and honor were pledged, at least impliedly, to the effect that it would not permit its courts to try him for any other offense, even though it might be of a lesser grade than that upon which he was surrendered. Furthermore, the offense for which Rauscher was actually tried was not one for which Great Britain had bound itself, by the terms of the treaty with this country, to surrender him. It may very well be that had he been charged in

the application for extradition with only the offense for which he was tried, that the government within whose jurisdiction he was found would have refused to surrender him to the authorities of the United States. It would, therefore, seem to be clear that his trial for another offense was in violation of the faith and honor of the government as well as of an express law of Congress.

These considerations are not applicable to the case now before us. The obligations of the states of this Union to surrender to each other persons charged with crime is not founded upon comity or treaty, but upon the plain provisions of the federal Constitution, found in article 4, section 2, as follows : "A person charged in any state with treason, felony or other crimes, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he has fled, be delivered up to be removed to the state having jurisdiction of the crime."

The obligation thus imposed upon the states is not, like treaties between independent nations, limited to specific offenses, but embraces all crimes, and if the demanding state, when the fugitive is surrendered to it, cannot try him for any other offense than that charged in the warrant of extradition, that is a condition that must be implied, as it is not expressed in the instrument creating the obligation. Whether a fugitive from justice can be tried in the state from which he has fled, and to which he has been surrendered, for any other offense than that charged in the application of the governor of the surrendering state, is a question upon which much conflict of authority is to be found in the courts of the several states and in the inferior courts of the United States, as the federal supreme court has not yet, so far as I am informed, passed upon the point. We are asked in this case to hold that the rule must be the same in cases of interstate and international extradition, and

that the principles which control the latter have been announced in the Rauscher case.

We are not prepared to hold that the doctrine of that case is necessarily applicable to this. There were reasons for that decision that do not exist in this case, some of which we have already pointed out. It may be proper to add, also, that the act of Congress regulating interstate extradition does not provide that the fugitive surrendered shall be exempt from trial upon any other charge, while that regulating international extradition does, according to the construction given to it by the highest federal court, as we have seen (*U. S. Rev. Stat.* secs. 5278, 5279 ; Rauscher case, *supra*).

It was competent for Congress to insert the same or a similar provision in the statute regulating extradition between the states as that regulating extradition from foreign nations, but it is somewhat significant that it has not done so. The states, though sovereign and supreme in their domestic affairs and as to all matters not conferred by the Constitution of the United States upon the federal government, bear relations to each other, with respect to the question now under consideration, somewhat different from that of foreign and independent nations.

Possibly it would be competent for the states to enact that persons charged with crime in other states should not be taken from the jurisdiction where they are found unless, by the laws of the demanding state, they are not liable to be put upon trial for any other offense than that charged in the demand for his surrender. But I am not aware that any of the states have enacted such regulations. On the contrary, the highest court of Wisconsin, the state from which the relator was demanded and received, has held that a fugitive from justice surrendered to another state upon demand, under the Constitution, may be tried in the state from which he fled for any other offense of which its courts may have juris-

diction (State *v.* Stewart, 60 Wis. 587; Adriance *v.* Le-grave, *supra*).

As this is the law of that state, it is difficult to see how any rule of comity has been disregarded by reason of what has been done in the case at bar. We do not think it necessary in this case to decide the question as to whether there is a distinction to be observed in cases of interstate and international extradition with respect to the trial of the person extradited for another and different offense. We think that as the charge upon which the relator is now held, though designated as robbery, is based upon the identical act for which he was surrendered by the governor of Wisconsin, and then designated as grand larceny, that no principle of comity between the states, nor any legal right secured to the relator, has been violated.

For these reasons the order appealed from should be affirmed.


All concur.


Note.—It will be noted that the decision of the court of appeals in this case is much more limited in its scope than that of the general term of the supreme court (reported *ante*, page 421).

The general term held broadly that a person extradited from one state to another may be tried for a different crime than that upon which he was extradited.

The court of appeals only held that a person so extradited may be indicted and tried upon a different charge when the offense for which he was extradited and that for which he is tried consist of the same identical act.

The decision of the general term, therefore, while it is affirmed, is limited by that of the court of appeals.

For a note containing all the recent authorities, and also some discussion of the question involved in the case at bar, sec. 7 *N. Y. Crim. Rep.* 411.

That a person may be extradited from one state to another upon one charge and then tried on another was held in Ham *v.* State (4 *Tex. App.* 645) and Williams *v.* Weber( [Colorado Court of Appeals 28]

*Pac. Rep.* 21). In the latter case, as in the case at bar, the act charged in both indictments was the same.

Upon this question Judge Cooley, in an article in the *Princeton Review* for January, 1879, writes:

" To obtain the surrender of a man on one charge and then put him upon trial on another is a gross abuse of the constitutional compact. We believe it to be a violation, also, of legal principles. It is a general rule, that when, by compulsion of law, a man is brought within the jurisdiction for one purpose, his presence shall not be taken advantage of to subject him to legal demands or legal restraints for another purpose. The legal privileges from arrest when one is in the performance of a legal duty away from his home rest upon this rule, and they are merely the expression of reasonable exemption from unfair advantages. The reason for the rule applies to these cases; and it should be held, as it recently has been in Kentucky, that the fugitive surrendered on one charge is exempt from prosecution on any other. He is in the state by compulsion of law upon a single accusation. He has a right to have that disposed of and to depart in peace."