LAURA RUTLEDGE ET AL. v. GUSTAV ADOLPH KRAUSS.

Argued February 27, 1906—Decided June 11, 1906.

1. A person surrendered to this state by the executive of any other state, under extradition proceedings, to answer for a crime committed here, may be held, tried, convicted and sentenced here for another and distinct offence from that for which he was returned.

2. A civil suit may likewise be instituted here against such person so returned before his discharge or immediately upon it. He is not entitled to a reasonable time after his discharge to permit him to return to the state from whence he came before such suit may be instituted.

On rule to show cause why the arrest of the defendant should not be set aside and the defendant discharged from imprisonment thereunder.

Before Justices FORT, PITNEY and REED.

For the rule, *Gilbert Collins, Robert S. Hudspeth* and *Robert Carey*.

*Contra, Warren Dixon.*

The opinion of the court was delivered by

FORT, J. Gustav Adolph Krauss was indicted by the grand jury of Hudson county for malpractice. After the offence was committed he left the State of New Jersey and went to the State of New York. While in New York he was indicted. Formal application was made by the executive of the State of New Jersey to the executive of the State of New York for his extradition as a fugitive from justice. He was surrendered and lodged in the Hudson county jail.

While thus held a civil suit was instituted against him by Laura Rutledge, the person upon whom the alleged malprac-

tice was said to have been committed, and Thomas Rutledge, her husband. In this civil suit there was an order to hold the defendant to bail. He was bailed upon the indictment, and but for the order for bail in the civil suit, he could be discharged.

The application is to set aside the arrest and to discharge the defendant from custody.

The contention is that a person brought into this state from another state upon a criminal requisition is, while confined on the charge and until he have a reasonable opportunity to leave the state after discharge, privileged from arrest on civil process.

There appears to us to be no reason founded in law, public policy or private rights on which to base such a rule. A fugitive from justice, returned to the state from whence he has fled after committing the offence, is not in a position to say he should not answer for his acts done or obligations contracted when previously within the state. The exception to this statement, of course, should be when the party is brought into the state by any fraudulent act or conduct on the part of the person who is seeking to prosecute the action against him after he arrives here. Of course, in cases of extradition of subjects or citizens of foreign countries, where to hold a person extradited for any other crime than that for which he was extradited is in violation of treaty obligations, the rule is different. There the sovereignty of the surrendering nation intervenes, and the courts hold that such a citizen or subject so surrendered, pursuant to treaty provision, is only liable to answer for the single offence for which he was surrendered. 12 *Am. & Eng. Encycl. L.* 597*b; United States* v. *Rauscher,* 119 *U. S.* 407; *Adriance* v. *Lagrave,* 59 *N. Y.* 110.

But such should not be the rule between the states of this republic. All residents of each state are citizens of the United States, and the executive of one state is charged with a duty to surrender a fugitive from justice from another state found in his state, upon the requisition of the executive of the state from whence he has fled, if the application therefor conforms

to the act of congress governing the matter, and when such a fugitive is thus returned, without fraud or other wrongful .act on the part of the public prosecutor or other representative of the state, he may be indicted for and convicted of other offences than those upon which he was extradited while he is still held under the charge upon which he was extradited. *Commonwealth* v. *Wright,* 158 *Mass.* 150; *Lascelles* v. *Georgia,* 148 *U. S.* 537; *People* v. *Cross,* 135 *N. Y.* 536.

And we can see no principle of justice, founded in reason, for protecting such an extradited person from a civil action brought by any suitor of the state from whence he fled while he is within the jurisdiction of the courts of that state, unless such suitor had been guilty of some wrongful or fraudulent :act or conduct leading up to the extradition.

Our attention was called by counsel to the fact that in this state we hold that a person coming here from another state voluntarily as a witness or party to a suit is free from arrest or service of process in a civil action. Such is undoubtedly the rule. *Halsey* v. *Stewart,* 1 *South.* *366; *Dungan* ads. *Miller,* 8 *Vroom* 182; *Mulhearn* v. *Press Publishing Co.,* 24 *Id.* 153; *Jones* v. *Knauss,* 4 *Stew. Eq.* 211.

But the coming as a fugitive from justice under extradition is not to be considered in the same light as the voluntary coming into our state to seek in our courts rights against a citizen of this state. Comity between the states requires that the citizens of each state shall have liberty of right to thus institute and prosecute suits in the courts of the other states.

Mr. Justice Jackson says, in *Lascelles* v. *Georgia, supra:* "In the matter of interstate rendition, however, there is the binding force and obligation, not of contract, but of the supreme law of the land, *which imposes no conditions or limitations* upon the jurisdiction and authority of the state to which the fugitive is returned."

What the courts of the several states may choose to do by way of comity between the states in respect to citizens of other states who are voluntary suitors in their courts is one thing. What such courts are required to do when a fugitive

from justice from their state is returned to it, under the constitution and the acts of congress of the United States, is quite another thing. Comity does not enter into the case of a person returned to a state as a fugitive. The only obligation to such a person so returned is that he shall have the same rights and immunities guaranteed to citizens of the state to which he is returned.

It is true that in some of the states another view has been taken. *Moletor* v. *Sinnen,* 76 *Wis.* 308; *In re Frank Cannon,* 47 *Mich.* 481; *State* v. *Hall,* 40 *Kan.* 338.

The Michigan, Wisconsin and Kansas cases just cited were all decided before the opinion of the Supreme Court of the United States in *Lascelles* v. *Georgia, supra.* All these cases were rested upon the theory that there was no distinction to be drawn between citizens or subjects of a foreign government released to us under extradition treaties and citizens of one of the states of the United States surrendered on the demand of another state under the forms of law established by ourselves under our national constitution. That is the fatal error in the premises upon which the result was reached in those cases. This is made manifest by the decision of the Supreme Court of the United States in Lascelles *v.* Georgia.

But other states, both before and since that decision of the Supreme Court of the United States, have held that a state could hold an extradited person for other offences than the one for which he was extradited. *People* v. *Cross,* 135 *N. Y.* 536; *Commonwealth* v. *Wright,* 158 *Mass.* 150; *In re Miles,* 52 *Vt.* 609; *State, Brown* v. *Stewart,* 60 *Wis.* 587; *Ham* v. *State,* 4 *Tex. App.* 645; *Williams* v. *Weber,* 1 *Col. App.* 191.

And since the decision of the Supreme Court of the United States in Lascelles *v.* Georgia this may now be deemed settled law. 19 *Cyc.* 97, and cases cited.

The law being settled that under extradition a citizen of one state taken into another to answer for a particular crime is not protected from arrest, indictment, trial, conviction and sentence for another and distinct offence, it seems difficult to formulate any theory which precludes the right to institute

a civil suit against such extradited person while he is within the state to which he has been extradited awaiting trial. He is not, therefore, entitled to exemption from service for a reasonable time after he is discharged upon the criminal complaint that he may return to the state from whence he was brought before civil suit may be instituted. *Adriance* v. *Lagrave,* 59 *N. Y.* 110; *Reid* v. *Ham,* 54 *Minn.* 305; *In re Walker,* 61 *Neb.* 803; *Williams* v. *Bacon,* 10 *Wend.* 636; 19 *Cyc.* 98, XVII.

The defendant in the case before us was extradited from the State of New York, and we have seen that the highest court of that state holds that a person thus surrendered is not entitled in that state to immunity from arrest for other crimes or upon civil process. Therefore, even the rule of comity between states, if it existed in such a matter, would not require us to set aside the order of arrest in this case. Comity means that we will do by courtesy what they would do under like circumstances with a citizen of our state.

It is contended also that the defendant here should be discharged because the plaintiff Thomas Rutledge assisted in the proceedings in extradition to secure the bringing of the defendant into this state.

It does appear that Thomas Rutledge did make the complaint before the grand jury, and at the request of the public prosecutor made an affidavit in the extradition proceedings reciting that he had made the complaint, and that Krauss was in Jersey City when the crime was committed, on October 27th, 1903, and has since that time fled the state, and that he was at the time he made the affidavit in the custody of the police of New York City, and that he was present in the First Criminal Court of New York City when Krauss was committed to await extradition.

In our state we hold it to be the duty of a private citizen to complain against one known to have committed a crime, and there may be a question whether he can bring on the trial of a civil suit arising out of a criminal act of the defendant until

he has performed his public duty. *McBain* v. *Edgar*, 36 *Vroom* 634.

In making the complaint upon which the indictment is founded and in making the affidavit in the extradition proceedings, we cannot see that there was any fraud or improper conduct on the part of either of the plaintiffs.

It is not suggested in the proceedings to vacate the order of arrest in this case that the charges made by the plaintiffs are false, nor is it proven that the indictment was procured for the purpose of extraditing the defendant that the civil suit might be brought.

The application to set aside the arrest and discharge the defendant from custody is refused.