THE STATE OF CONNECTICUT vs. WILLIAM KIRSCHENBAUM.

Third Judicial District, Bridgeport, April Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, Js.

Argued April 16th—decided July 10th, 1929.

*John Keogh,* with whom was *Brien McMahon,* and, on the brief, *Lawrence S. Finklestone,* for the appellant (the accused).

*William H. Comley,* State's Attorney, with whom was *Lorin W. Willis,* Assistant State's Attorney, for the appellee (the State).

WHEELER, C. J.   The first ground of appeal which we shall consider is the trial court's denial of the motion of the accused to set aside the verdict as contrary to the evidence.   The State offered evidence to prove, and our examination of the evidence has satisfied us that the jury might reasonably have found these facts proven:   On October 29th, 1926, Reuben Segall, the father of Jack P. Segall, operated a business at Elizabeth, New Jersey, and on this day the property used in the business was damaged by fire.   The accused acted as a public adjuster in behalf of the assured in adjusting and settling the claims against the insurance companies for the loss; this was completed

in the middle of November, 1926. There remained certain of the damaged goods by way of salvage. The accused on the night that the insurance companies agreed to settle this loss, proposed to Jack P. Segall that he take the salvage, which was worth $500, and turn it into $10,000 of real money by adding to it machinery and other merchandise and setting up a business for the manufacture of rubber goods, procure insurance upon the goods and machinery, burn the premises in which these were and procure a large profit by way of insurance. Segall consented to this proposal. The accused later explained the proposition further, saying he would help to finance it, to get the location, to see that the machinery was installed without Segall paying anything, to see that the fire was set and the building burned and that the insurance company paid the fake loss. The accused first suggested that the location be in Trenton. Segall hired a place there but did not carry out his contract of hiring and the accused then informed him a place had been picked out in Bridgeport and Shearer would go there in a day or two and hire the place. Shearer was selected by the accused to go to Bridgeport. Shearer and Segall went to Bridgeport about December 15th, 1926, and by Shearer's direction they went to the building 1483 Main Street and rented a loft therein. On the day after their return to New York Segall met the accused and reported what they had done. The accused then said the loft was too large and expensive but he would furnish enough machinery to make it A No. 1. In January, 1927, Shearer, at the instance of the accused and Segall, sent up about seventy secondhand sewing machines and Shearer came to Bridgeport and installed them in this loft. Thereafter Segall proceeded to stock the loft with a large quantity of rubber goods, most of which were damaged and of little value. The machines

for the most part were worthless although a local mechanic succeeded in setting up four machines so that they would operate. Segall hired a number of girls and there was carried on an ostensible business of cutting and sewing goods, the trade name of the business being The Reduso Rubber Products Company. Segall also purchased goods of considerable amounts which were never paid for.

Having set up this plant Segall obtained insurance upon the merchandise and machinery in the loft to the amount of $28,500, all of which was in force on May 3d, 1927. Segall had been in communication with the accused and informed him of the rental of this loft, the installation of the machinery and merchandise and the procuring of the policies of insurance. One of these for $10,000 was delivered by Segall to the accused and was in his possession at the time of the fire, on which he loaned Segall $1000. Under his agreement with Segall the accused was to get for financing the transaction $2 for every dollar he put in and ten per cent of the amount received from the adjustment of the fire loss. At 10.30 o'clock on the night of May 3d, 1927, fire was discovered in this loft. The firemen arrived in about three minutes and found an intense fire raging. It was quickly subdued; it was of the kind known as a flash fire and was of incendiary origin. On May 4th the accused came to Bridgeport, met Segall, visited the premises and examined the policies of insurance. Thereafter he participated in making a count of the merchandise and machinery and in presenting proofs of loss to the companies purporting to show damage to the amount of about $28,000. The accused lived in Newark, but when he met, on May 10th, the representatives of the insurance companies for the purpose of beginning the preliminary work for the presentation of proofs of loss he exhibited to them

his own business cards, purporting to show that he was an insurance adjuster having an office and place of business in Bridgeport, Connecticut; this was a fabrication. After starting this preliminary work, the accused perceiving that the insurance companies suspected the fire was of incendiary origin, immediately left Connecticut, going to Newark and from there continued to help Segall in the preparation of the proofs of loss.

The accused was arrested in New Jersey on a warrant from Connecticut charging him with a conspiracy with Segall and others to burn a building known as 1483 Main Street, Bridgeport, with intent to defraud insurance companies; the charge was based on § 6231 of the General Statutes. He was extradited on that warrant. The accused was placed on trial September 19th, 1928, on an information charging him with the crime of arson in accordance with § 6231 of the General Statutes, found guilty and sentenced on September 29th, 1928.

We summarize the facts which the accused claimed to have proved. The accused offered evidence to prove that he had been for many years a public insurance adjuster in Newark and had not for more than six years prior to May 3d, 1927, been in Bridgeport. On May 4th, 1927, in response to a message from Segall, he came to Bridgeport and contracted with Segall for the adjustment of the loss from this fire. He left his son in Bridgeport for several days while the insurance adjusters were examining and appraising the merchandise and returned to New York and in the following few weeks he visited Bridgeport at convenient times to note the progress of the investigation into the loss. After the accused learned that the insurance companies suspected the fire was of incendiary origin he returned to New Jersey and abandoned his contract

with Segall. Prior to the fire the accused had no knowledge of the extent of the insurance on the property of Segall and did not have any communication with any agent or representative of the insurance companies regarding this insurance. He did not know of Segall's purpose to burn his own property, he had nothing to do with hiring the premises, arranging the merchandise or setting fire to the same. At no time between the early part of January, 1927, and May 4th, 1927, did he have any conversation or meeting with Segall or any communication with him concerning the establishment of the factory in Bridgeport. His only connection with this was that arising from his contract of May 4th to adjust the loss. He was not present when the proofs of loss were completed, signed or forwarded to the companies, he did not cause or arrange for, or advise anyone to set the fire nor furnish the data from which the proofs of loss were prepared, nor did he have any connection with the plan to set the fire or to defraud any of the insurance companies. He had the cards printed in expectation of opening a business in Bridgeport.

The State's case depended upon the credit to be given to the testimony of Segall who had been found guilty of the offense for which the accused was on trial, and at the time of the present trial was in the State prison, in execution of his sentence. The jury were correctly charged as to the weight to give to the testimony of an accomplice. Segall's story of this crime was corroborated at a number of points. The accused's presentation of his business card upon which he represented himself as engaged in business in Bridgeport was manifestly intended to deceive the insurance companies. His explanation of this was not credible. We cite this as not only an instance where the integrity of the accused's testimony was im-

peached, but as one of the instances corroborating Segall's story. The jury would have been justified in finding the accused's testimony far from convincing and filled with contradictions, inconsistencies, evasions, and manifest untruths. His counsel attack in their brief both court and State's Attorney, the first for his solicitude for Segall "even at the expense of counsel"; the second for attempting to show connection of the accused with the adjustment of a fire loss in New Jersey in the effort to prejudice the jury against the accused. The record disproves each charge. The same tactics were indulged in by counsel for the accused in the trial court; the result indicates, as it customarily does, that, as a rule, success in the court room does not follow professional methods of this character. The jury must have weighed the motive of Segall in telling his story in order to have the accused, whom he had charged as the originator and promotor of this crime, convicted as he had been, and noted too its inconsistencies and contradictions, and despite these, gave it credit. We find abundant reason for their conclusion when the entire evidence is carefully examined and compared and weighed with the corroborative facts and with the discredited testimony of the accused. The trial judge was right in refusing to set aside the verdict.

We shall now take up the reasons of appeal in the order and number as designated in the brief in behalf of the accused.

Error one is predicated upon the instruction that the charge against the accused is brought under Chapter 85 of the Public Acts of 1927, which amended § 6231 of the General Statutes to read: "Every person who shall commit arson, and every owner or tenant of any building who shall wilfully burn it, or anything therein, with intent to defraud, prejudice or injure another . . . shall be imprisoned." The offense was committed

prior to the enactment of this statute. The accused was informed against and tried upon § 6231 of the General Statutes: "Every person who shall commit arson, and every owner or tenant of any building who shall wilfully burn it, or anything therein, with intent to defraud another . . . shall be imprisoned." The difference in the two statutes is that § 6231 used the words "with intent to defraud another," while the Act of 1927 amended the statute so that these words read, "with intent to defraud, prejudice or injure another." The amendment broadened § 6231 by adding to "with intent to defraud," "prejudice or injure." The information did not charge the offense with intent to prejudice or injure another. No such claim was made by the State upon the trial. At least three times in the course of its instructions to the jury the court stated that an element of the charge, or the gravamen of the charge, was the setting the fire with intent to defraud, or assist in defrauding the insurance companies. It was impossible for the jury to have mistaken that the charge was one to defraud the insurance companies, or to have assumed that it was sufficient for them to find that this burning was with intent to prejudice or injure and not with intent to defraud the insurance companies. He has been tried and convicted of the specific offense which was fully presented to the jury. The mistake of the judge did the accused no harm. His counsel admit that they noticed the misstatement of the trial court at the delivery of the charge and prior to the verdict, but at no time before the verdict did they call the attention of the court to this mistake, as was their duty if they purposed taking advantage of this subsequently. *State* v. *Perretta,* 93 Conn. 328, at 340, 342, 105 Atl. 690. That experienced counsel did not call the court's attention to this, so that the mistake could have been rectified, indicates somewhat

persuasively that they did not, prior to the rendition of the verdict, esteem this a reversible error. If this was their judgment at that time we share it.

Error two is the claim of the accused that the proof of the State is lacking because there was no proof that the accused was the owner or tenant of the building in which the fire occurred. This was not essential. Under § 6716 of the General Statutes, he could be tried as a principal, provided the evidence proved that he "assisted, aided, abetted, counselled, caused, hired, or commanded another to burn the premises" as charged. The State claimed to have proved that the accused's relation to the crime charged brought him squarely within the provisions of this section, and the jury might, upon the evidence, have reasonably so found.

Error three is, the failure of the court upon request of the jury for instruction, to give it. The jury had the case under advisement from 1.30 p. m. to 11.30 p. m. of September 28th. On the following morning, before the court returned the jury to a further consideration, the foreman asked the court for the month in which Segall maintained that these preliminary conferences were held. In the absence of the jury the court consulted with counsel as to this date, and thereafter recalled the jury and replied to this inquiry as follows: "You remember that the examination of Segall took the greater part of a day, as a matter of fact it has taken the greater part of a day's record, and in order to get the information before you it would be necessary to go through practically the entire testimony. For that reason, I will ask you to depend upon your own recollection as to this testimony in that respect, and determine the facts." It would have been better had the court answered this question in accordance with its recollection of the evidence. The course

of the court, in the absence of an abuse of its discretion—no such claim is made for the accused in this case—was within its discretion. Further, counsel for the accused did not at the time take exception to the ruling of the court.

Error four is the claim of the accused that he was extradited for one offense and convicted for another offense. The information upon which the accused was extradited from New Jersey charged him with conspiracy to burn a building with intent to defraud certain insurance companies. He was arraigned and tried in the Superior Court on a charge of arson committed on May 3d, 1927, under § 6231 of the General Statutes, and he now claims was convicted under Chapter 85 of the Public Acts of 1927, which was not in force at the time of the alleged offense. His first contention under this assignment of error is that having been extradited to Connecticut upon one charge he cannot be here charged with another offense and convicted of that. Prior to the case of *Lascelles* v. *Georgia*, 148 U. S. 537, 13 Sup. Ct. 687, several of the States, including Michigan, Wisconsin, Kansas and Ohio, had held that the fugitive from justice could not be tried in a State to which he had been extradited for an offense other than that upon which he was extradited. The basis of their ruling was that the rule, applied in the case of the foreign extradition of fugitives from justice, that the surrender of the fugitive carries with it exemption in the nation to which he is surrendered "in respect to all offenses other than those specified in the demand for his surrender," was equally applicable to the States of the Union. "But the fallacy of the argument lies in the assumption that the States of the Union occupy towards each other, in respect to fugitives from justice, the relation of foreign nations, in the same sense in which the general government

stands towards independent sovereignties on that subject; and in the further assumption that a fugitive from justice acquires in the State to which he may flee some state or personal right of protection, improperly called a right of asylum, which secures to him exemption from trial and punishment for a crime committed in another State, unless such crime is made the special object or ground of his rendition." *Lascelles* v. *Georgia, supra.* The weight of authority prior to, and the overwhelming weight since this decision, holds that the fugitive from justice extradited from one State to another is not exempt from prosecution and punishment for offenses other than those for which he is extradited, committed within the State to which he is extradited, either before or after extradition. We cite a few of the cases whose discussion of this precise subject has made further consideration at this time unnecessary. *Lascelles* v. *State,* 90 Ga. 347, 16 S. E. 945; *In re Flack,* 88 Kan. 616, and cases cited, 129 Pac. 541; *Commonwealth* v. *Wright,* 158 Mass. 149, 33 N. E. 82; *Rutledge* v. *Krauss,* 73 N. J. L. 397, 63 Atl. 988; *People* v. *Martin,* 188 Cal. 281, 205 Pac. 121; *People ex rel. Post* v. *Cross,* 135 N. Y. 536, 32 N. E. 246. The second contention under this assignment of error we disposed of in considering the first assignment of error.

The rulings on evidence cover eleven exceptions which we shall briefly consider.

Error five claims, in behalf of the accused, that he was prevented from showing that insurance companies were behind the prosecution of the accused. A civil engineer called by the State testified that he had made a map of the premises burned. The map was introduced in evidence. On cross-examination counsel for the accused inquired: "Weren't you told, or didn't you understand that you were employed on behalf of

some insurance company or insurance companies?" The question was excluded. The civil engineer was not asked, whether his immediate employer did not tell him this. His own understanding could not prove that the insurance companies were behind the prosecution. The exclusion of the question was correct; the reason given by the trial judge, that it was not proper cross-examination, was not an adequate reason for the exclusion of this subject-matter. It was legitimate cross-examination had the inquiries been properly put. Harmful error could not well be predicated upon the exclusion of such evidence.

In error six complaint is made that the court's ruling allowed the State to go into the facts relating to the fire in the factory of Segall's father at Elizabeth, New Jersey, when he had no connection with the case against the accused. The proposal leading to the agreement between the accused and Segall originated in connection with this fire. The State claimed to prove and offered evidence to prove, that the accused acted as an adjuster of the fire loss of the fire in the father's factory, and that immediately after the insurance companies had agreed upon the payment to be made the accused proposed to Segall that they take the salvage from his father's fire, add additional material to it, place it in a plant to be set up, and have another successful fire. The evidence was both relevant and material as an important part of the proposal made by the accused to Segall, which led, as the State claimed, to the agreement to burn the premises in Bridgeport.

Reasons of appeal twelve and thirteen relate to evidence of a similar character.

In error seven it is claimed that the admission of evidence of conferences between the accused and Segall in November, 1926, were too remote from the charge

in the information as of May, 1927. Everything which transpired between the accused and Segall relative to the burning of these premises and the defrauding of the insurance companies was clearly admissible.

Error eight relates to the admission of testimony of Segall relative to some of the things done by him in carrying out the suggestions of the accused in seeking a plant in New Jersey for burning. These are claimed to have been offered by the State in order to create an atmosphere prejudicial to the accused. The record furnishes no basis that we can discover for this reflection upon the representative of the State.

Error nine is predicated upon the ruling of the court permitting the State to offer evidence of the purchase of merchandise in setting up the manufacturing business in 1483 Main Street. This evidence was part and parcel of the plan which the State claimed to have proved the accused concocted and Segall carried out with his own advice and assistance. Counsel for the accused say the ruling was beyond any reasonable exercise of discretion on the part of the trial court. It was not within the court's discretion to exclude this evidence. The State was entitled to prove its case; this evidence was clearly a part of the facts surrounding the charge against the accused.

Error ten is the claim that proof of Segall's attempt to procure additional insurance was inadmissible and offered in prejudice of the accused. For the same reason as in error nine, evidence that Segall attempted to secure additional insurance to that obtained was admissible. Counsel for the accused renew the claim that the offer of this evidence was an attempt on the part of the State to set up an atmosphere against the interest of the accused by the use of extraneous and inadmissible evidence. The gravity of such a charge— impeaching the good faith of the State's Attorney and

signifying his willingness to secure the conviction of an accused by deliberately creating in the minds of the jury an unfair and unfounded prejudice against the accused which would help lead to his conviction—seems to have escaped the consideration of counsel. Claims of this character ought not to be lightly made in the Superior Court in the heat of the conflict, much less in this court upon brief or in argument, after the period of reflection has intervened. We are persuaded this claim originated either through overzeal in behalf of an accused, and a mistaken judgment that it could in this court be helpful to the accused, or in a mistaken conception of what is, or is not, evidence, or both.

Error fourteen concerns claimed improper cross-examination. The cross-examination of the accused as to whether when Attorney Martin representing the insurance companies was examining Segall as to the fire on May 10th and 11th, Segall refused to testify and whether the accused said, "I might say that my client is here acting by my advice," was admissible cross-examination. The accused replied, he did not remember. In view of his answers, though the questions had been inadmissible, we could not have held, upon this record, that the error was harmful. The accused's entire relations with Segall from the time of his alleged proposal to Segall succeeding the Elizabeth fire relating directly or indirectly to the fire in 1483 Main Street in view of the scope of the direct examination were legitimate subjects of cross-examination. Further along the accused did admit that he had said at this time to Mr. Martin, "My advice is to get his lawyer and to get your authority."

Error fifteen concerns the cross-examination of the accused concerning his office in New York City. The accused testified he had an office on Beekman Street, New York, and the insurance companies acknowledged

receipt of proofs of loss there. The State on cross-examination inquired of him as to his occupancy and rental of this office; these questions were admitted over the exception in behalf of the accused. Obviously the purpose of the State was to show that this place of business was not the regular place of business of the accused and may have been given the insurance companies so that the accused's place of business in New Jersey and his connection with Segall might not be disclosed. It was proper cross-examination, for this purpose, and also in response to the accused's testimony on his direct examination and in his volunteered statement on the cross-examination.

Error sixteen concerns the claimed improper argument of the State's Attorney. In his argument the State's Attorney gave his reasons for not having charged Roth, the brother-in-law of Segall, with the crime the accused is charged with. Counsel for the accused, by the emphasis they placed upon this matter and the severity of their criticism of the State's Attorney, invited the spirited reply of the State's Attorney to their argument that Roth was guilty with Segall of the crime charged against the accused and should have been put to trial upon this charge, and that the State's Attorney had been remiss in his duty in not bringing Roth to trial instead of the accused. Under those circumstances we are of the opinion the State's Attorney did not exceed the limits of fair argument. *State* v. *Chapman,* 103 Conn. 453, 477, 130 Atl. 899. Further, the fact that counsel for the accused took no exception to the remarks of the State's Attorney, either at the time they were made or at the close of his argument, was a waiver of the right of the accused to now press this assignment of error. *State* v. *Frost,* 105 Conn. 326, 338, 135 Atl. 446.

The corrections of the finding are either without

merit, or too inconsequential, to base harmful error upon.

There is no error.

In this opinion the other judges concurred.