THE STATE OF CONNECTICUT *vs.* LOUIS LEOPOLD.

Third Judicial District, New Haven, June Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued June 11th—decided July 25th, 1929.

*John H. Cassidy,* with whom was *William T. Keavney, Jr.,* for the appellant (the accused).

*Lawrence L. Lewis,* State's Attorney, for the appellee (the State).

BANKS, J.   In the early morning of February 5th, 1928, an explosion followed by a fire occurred in a building on Baldwin Street in Waterbury, and two boys, the sons of a tenant of the building, were burned to death.   The fee of the property was in the name of

the wife of the accused, and a portion of the building was used for the storage of furniture by The Waterbury Furniture Company, a corporation of which the accused was a majority stockholder. The accused, jointly with one Shellnitz, was indicted upon a charge of murder in the first degree and of having caused the death of the two boys by wilfully burning the building. The charge against the accused was that he employed Weiss to set fire to the building for the purpose of collecting insurance upon the building and the furniture stored in it. Weiss was burned to death in the fire.

Preceding the trial on the merits, the accused moved for a change of venue, alleging that he could not have a fair trial in Waterbury because of prejudice aroused by the publication of stories of the crime in local newspapers. The court made a finding of facts upon the evidence offered in support of the motion, and reached the conclusion that no facts were established which indicated that there could not be a fair and impartial trial of the accused in Waterbury. The facts found support this conclusion. The power to grant a change of venue rests in the sound discretion of the court, and its decision is final unless it clearly appears that the discretion has been abused. *State* v. *Chapman*, 103 Conn. 453, 470, 130 Atl. 899. The court did not err in denying the motion.

Error is predicated upon the denial by the trial court of a motion made to it by the accused for a new trial. The accused moved for a new trial on the ground that his trial was unfair because of certain references to other fires with which he might have been connected, made in the testimony of the witness Johnson and in a question asked of the witness Feinberg, and because of a statement made in the closing argument of the State's Attorney. The exceptions taken to references to other fires in connection with the evidence given by Johnson

and Feinberg were made the basis of motions for a mistrial and will be considered in treating of those motions. The motion states that the State's Attorney, in his closing argument, said that he had made no promise of leniency to Shellnitz, who was jointly indicted with the accused, and who had testified on behalf of the State, and promised the jury that he would be dealt with as the crimes with which he was charged demanded. There is no finding as to the exact language used by the State's Attorney, nor does it appear that the attention of the trial court was called to it, or any objection made or exception taken at the time. Ordinarily, unless such action is taken, such utterances afford no ground for an appeal or for an application for a new trial. *State* v. *Laudano,* 74 Conn. 638, 644, 51 Atl. 860. The claimed remark of the State's Attorney seems unobjectionable, and certainly was not of such a character as to warrant a new trial in the absence of an exception taken at the time. *State* v. *Kirschenbaum,* 109 Conn. 394, 146 Atl. 837.

The accused also assigns as error the failure of the court to grant motions for a mistrial made by him on different occasions during the trial of the case. It was the claim of the State that one Weiss was employed by the accused to set the fire. Shellnitz, a witness for the State, was asked upon his direct examination whether Weiss was at a certain place and replied, "No, he is going away to see Leopold." On two subsequent occasions the witness volunteered the information that Weiss "was going to see Leopold." No objection was made to the first statement and the last two were stricken out on objection and the court told the jury to disregard them, but denied the motion made at the time for a mistrial. Johnson, a witness for the State, was inquired of as to a conversation he had with the accused after the fire and answered, "I told him I

thought he made his last fire." This answer was stricken from the record and the jury told to disregard it. Later, the same witness was asked as to another conversation he had with the accused, and said that he had asked the accused whether or not he had a fire about a year ago in Naugatuck. Upon objection the answer was stricken out. The court denied a motion for a mistrial made at the time, but refused to permit the State's Attorney to interrogate the witness further as to his conversation with the accused, and in its charge told the jury to disregard matter stricken from the record. Feinberg, a witness called by the accused, testified that he had known Weiss for two years and characterized him as a bootlegger, and was then asked, on cross-examination, if he knew that Weiss was wanted in New Jersey for setting fires, and answered in the negative. The State did not at any time offer evidence that Weiss was wanted in New Jersey for setting fires. The State's Attorney asked the accused, upon cross-examination, if he had not made numerous settlements with insurance companies. An objection to the question was sustained, but a motion for a mistrial upon the ground that the question was an improper one was denied. A witness, Alice Babbitt, identified a picture of Weiss, and being asked to fix the time when she talked with him, said it was after the fire. She was then asked if she meant the fire that occurred in Waterbury. An objection to the question was overruled and a motion for a mistrial denied. None of these matters were of sufficient importance to have justified the court in declaring a mistrial. They were scattered through a trial lasting many days and would not have the cumulative effect which might appear from bringing them into juxtaposition. A mistrial should be granted as a result of some occurrence upon the trial of such a character that it is apparent to the court that because of it

the accused cannot have a fair trial and the whole proceedings are vitiated. It clearly appears from the record that the rights of the accused were fully protected by the rulings and action of the trial court.

Error is predicated upon the refusal of the court to charge as requested, upon the charge as given, and upon numerous rulings upon evidence. The accused claimed that the two boys who were burned to death were awake after the fire, and were on their way out of the building, and would not have met their death if they had continued on their way, but that of their own will they remained in the building or were sent back into a room of the building by their father to recover some money or other property there deposited, and requested the court to charge that if they had a reasonable opportunity to escape from the burning building and would have escaped but for their own conduct or the act of their father in directing them to return, the accused could not be found guilty of causing their death. The court did not so charge, but told the jury that the negligence of the victims of a crime did not diminish or nullify the crime and that even if they found the claim as to the conduct of these boys to be true the accused would not thereby be excused. This was a correct statement of the law. In a prosecution for manslaughter by the culpable negligence of the accused, the State is not obliged to prove that the deceased exercised due care to avoid the consequences of the unlawful act, and his failure to do so is not a defense available to the accused. *State* v. *Campbell*, 82 Conn. 671, 675, 74 Atl. 927. If it be said that the conduct of these boys was not negligent but intentional, still the accused was not harmed by this portion of the charge. Every person is held to be responsible for the natural consequences of his acts, and if he commits a felonious act and death follows, it does not alter its

nature or diminish its criminality to prove that other causes co-operated to produce that result. *State* v. *Block,* 87 Conn. 573, 89 Atl. 167; 13 R. C. L. 748, 751. The act of the accused need not be the immediate cause of the death; he is responsible though the direct cause is an act of the deceased if such act, not being itself an independent and efficient cause, results naturally from, and is reasonably due to, the unlawful act of the accused. 29 Corpus Juris, 1079; *State* v. *Badgett,* 87 S. C. 543, 70 S. E. 301. If the death of these boys resulted in a natural sequence from the setting of the building on fire, even though their conduct contributed to or was the immediate cause of it, the accused would be responsible; and the effort of a person to save property of value which is liable to destruction by fire is such a natural and ordinary course of conduct that it cannot be said to break the sequence of cause and effect. Nor would the conduct of the boys' father relieve the accused of responsibility for their death if it was caused by his act in setting fire to this building. The State claimed to have proved that the building and the furniture stored in it were insured for amounts largely in excess of their true value, and that the accused had a motive for the burning of the building. The accused claimed that the building and the furniture were insured for less than eighty per cent of their sound value, and requested the court to charge that the jury should take this into consideration upon the question of whether the accused had a motive for destroying this property, and also requested it to charge that they should consider the co-insurance clause in the insurance policies, the provisions therein for the payment of loss to mortgagees, and certain testimony as to the value of the property and the knowledge of the accused as to the amount of insurance carried. The court properly told the jury that motive was not a necessary element

of the crime charged, and that the State was not required to prove one, but that the accused claimed that he could have had no motive or reason to commit the crime, and that the jury should consider this claim and the evidence submitted in support of it, and called attention to, and interpreted the meaning of, the so-called eighty per cent or co-insurance clause in the insurance policy. The charge properly presented to the jury the claims of the accused as to an absence of motive with sufficient references to the evidence offered in their support.

The accused requested the court to charge that he could not be held accountable for the acts of Weiss unless they were satisfied beyond a reasonable doubt that Weiss was his agent, and that articles found in Weiss' clothing could not be considered in determining the guilt or innocence of the accused unless it was first proved that Weiss was acting as his agent. The accused was not entitled to so narrow a limitation of his responsibility. He was liable to prosecution as if he were the principal offender, under § 6716 of the General Statutes, which reads as follows: "Every person who shall assist, abet, counsel, cause, hire or command another to commit any offense may be prosecuted and punished as if he were the principal offender." In *State v. Levy*, 103 Conn. 138, 130 Atl. 96, we point out that this statute merely perpetuates the ancient principle that one who participates in any offense is liable to the same punishment as the principal offender. The jury were told at the beginning of the charge that the State relied upon this statute, that the claim of the State was that the accused procured and caused Weiss to set the fire, and that it was not claimed that the accused himself set fire to the building; and thereafter the court repeatedly charged that the State must prove affirmatively beyond a reasonable doubt every element going

to make up the crime charged. There was little if any question that this was an incendiary fire and that it was set by Weiss. The outstanding question in the case was whether the accused employed him to do it, and there can be no doubt that the charge made it perfectly clear to the jury that the burden was upon the State to prove that fact beyond a reasonable doubt.

The accused requested the court to charge that the testimony of the witness Shellnitz, being that of an accomplice, required corroboration, and should be entirely disregarded by them if they found that it was without corroboration. This is not our rule and the court correctly charged the jury that it was not absolutely necessary that the testimony of an accomplice should be corroborated before they could accept it. *State* v. *Frost*, 105 Conn. 326, 333, 135 Atl. 446. It quite properly told them that they should look with particular care upon his testimony, considering in this case the question of his moral turpitude, as well as other tests of credibility, and that the decision rested with them as to whether corroboration was necessary and the extent to which it was necessary.

Other requests to charge, in so far as they covered matters as to which it was the duty of the court to charge, were sufficiently complied with in the charge as given. Criticisms of the charge, outside of the matters discussed in the consideration of the requests to charge, are not well taken and do not merit discussion. The charge as a whole was correct in law and fairly and fully presented to the jury the issues involved in the case. Nor can the accused fairly complain of the response of the court to the requests of the jury for further instructions.

Some one hundred and sixty exceptions were taken during the trial to rulings on the admission and rejection of evidence, and these are made the basis of nu-

merous reasons of appeal. We shall discuss only those which counsel deemed of sufficient importance to pursue in brief and argument.

The accused objected to numerous questions asked of the witness Shellnitz with regard to the conduct of Weiss on the ground that the State had not shown any connection between Weiss and the accused. There was ample evidence in the case in proof of the claim of the State that Weiss was employed by the accused to set the fire. The State offered in evidence, for the purpose of identifying Weiss, two photographs, which were admittedly "rogues gallery" photographs with the numbers in the front and records on the back covered with paper. These were properly received in evidence for the purpose offered. The accused claimed that Weiss was not a "firebug" but a burglar, and asked that the paper covering his record on these photographs be removed, which request was denied. He then offered two photographs of Weiss, said to be the originals of the State's exhibits, which contained his prison record as a burglar and his Bertillon measurements. The State did not object to the admission of the photographs, but did object to the admission of the records appearing upon them and they were excluded. These records were offered by the accused to prove that Weiss was a burglar. That was not a relevant fact in the case, and if it had been, these records would not have been admissible to prove it.

To disprove the claim of the State that the building and the furniture in it were over-insured, the accused called Minnie Cohen, a clerk in his employ. She testified that she called up the agents of the companies that carried insurance upon the building, and obtained from them a record of the amount of insurance carried, and made a list of the policies. She was asked what she found was the amount of insurance carried on the

Baldwin Street property and the question was excluded. The accused also offered lists of the insurance carried on the Baldwin Street property and upon other property of the accused, made up by the witness from the information furnished her by the insurance agents, which were excluded. These rulings were correct. The evidence offered was hearsay, and the best evidence of the amount of insurance carried was the policies themselves.

The State claimed that the furniture set forth in the proof of loss filed by The Waterbury Furniture Company was not destroyed in the fire, and particularly that one lot of furniture known as the "Black Diamond Suite," which appeared in the proof of loss, was not burned. To contradict this claim the accused offered the testimony of Judson that, on three days just preceding November 14th, 1928, he had found parts of the Black Diamond Suite in the ruins. The fire occurred February 5th, 1928, and the court excluded the evidence on the ground that it was too remote, nine months having elapsed since the fire. This ruling did not constitute reversible error. Whether evidence is so remote in point of time as to be irrelevant is a matter within the discretion of the trial court. *State* v. *Saxton,* 87 Conn. 5, 86 Atl. 590.

The State, in rebuttal, offered the evidence of four witnesses, inmates of the New Haven County jail, who, over the objection of the accused, testified as to conversations had with him while he was there confined awaiting trial. The substance of their testimony was to the effect that the accused had offered them money to testify in his favor at his trial and to induce Shellnitz to so testify. This testimony was objected to on the ground that it was not rebuttal. The State's Attorney conceded that it was in part at least not rebuttal testimony, but that the facts had come to his

attention during the trial, and he felt it to be his duty to present them to the court. The order in which evidence shall be received is a matter resting in the sound discretion of the court, and the admission of evidence in rebuttal which should have been offered in chief is not ordinarily a ground of error. *State* v. *Buonomo,* 88 Conn. 177, 183, 90 Atl. 235. This evidence was no doubt very damaging to the case of the accused since, if believed, it strongly indicated his guilt. It was important evidence brought to light during the course of the trial, and we do not think the court abused its discretion in admitting it.

One of the questions in the case was whether a key found in the pocket of Weiss after the fire was one of the original keys to the lock upon the front door of the building or a duplicate. The State had offered evidence in chief identifying the key and the accused had testified that it was not the original key. In rebuttal the State offered the evidence of an expert locksmith who testified that the key was a factory made key and could have been one of the original keys to the lock, and gave his reasons for that conclusion. At the request of the State's Attorney he was permitted to demonstrate how the lock worked and to take it apart while the members of the jury stood in a group around the witness box to watch the demonstration. The accused objected to the evidence as not rebuttal, and objected to the demonstration and to the taking of the lock apart. The evidence was proper rebuttal evidence, and it was within the discretion of the court to permit the demonstration of the working of the lock and the taking of it apart to show its mechanism.

Morris Shellnitz, a witness for the State, testified upon cross-examination that he did not remember being arrested and convicted for selling intoxicating liquor in 1922. For the purpose of showing that he

had been convicted of selling intoxicating liquor, the defense offered the original of a complaint filed in the City Court of New Haven, charging him with a violation of the liquor law, upon the back of which there was an indorsement indicating that a fine of $100 had been imposed. This was not signed by either the judge or the clerk of the court, and the court sustained an objection to its admission in evidence as a record of a conviction of crime. The ruling was correct. A record of this kind must be authenticated by the signature of the judge or the clerk, and a mere unsigned memorandum does not constitute an admissible record. *Banach* v. *Bohinski,* 107 Conn. 156, 159, 130 Atl. 688. Such other rulings upon evidence as were discussed by counsel, either in the brief or upon the argument, were so clearly right as not to require consideration, or of such minor importance as not to constitute, even if incorrect, reversible error.

A careful examination of the entire record fails to disclose any error prejudicial to the accused and makes it clear that he had a fair trial.

There is no error.

In this opinion the other judges concurred.