THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ENRIQUE RIVERA RIVERA, Defendant and Appellant.

No. 10733.  Argued June 6, 1945.—Decided July 20, 1945.

*Mariano Acosta Velarde* and *Donald R. Dexter* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal)*, and *Luis Negrón Fernández, Assistant Prosecuting Attorney*, for appellee.

Mr. Justice Snyder delivered the opinion of the court.

The defendant was operating a locomotive of the American Railroad Co. which struck and killed Petrona Cruz at the intersection of a country road and the right of way of the railroad. The defendant was thereupon charged by the *Fiscal* with involuntary manslaughter, the information alleging that he operated the train which struck and killed the decedent "without due caution and circumspection." Section 203, Penal Code, 1937 ed. The bill of particulars filed by the *Fiscal* recited that "The negligence of the defendant consisted in operating the locomotive at an excessive speed which was not reduced nor any warning given on approaching the crossing." The defendant was tried by the lower court without a jury; he was convicted and sentenced to six months in jail; and the case is here on appeal from the judgment of conviction. We examine first the alleged error that the evidence was insufficient as a matter of law to establish the guilt of the defendant.

The testimony of the *Fiscal* was that the decedent was returning from a place where she had obtained a can of water, which she was carrying on her head; that she was walking along a country road which led to her home and which intersected the rails of the American Railroad Co.; that the noise of the approaching train could be heard at a

distance of at least sixty meters; that although there was some noise being made by automobiles, the noise of the approaching train predominated, some of the witnesses even asserting that they "felt" the train; that the approaching train could easily be heard and observed sixty meters from the intersection by a person who, like the decedent, was crossing the tracks from left to right, because (*a*) the tracks approached the intersection by curving to the right, (*b*) the curve was not sharp, and (*c*) no natural obstacles existed obstructing the view of the train coming around the bend. The photographs which were introduced in evidence confirm the fact that a train rounding the bend could easily be observed from the intersection.

Witnesses for the *Fiscal* also testified that there was no guard-rail at the intersection, that the train was going "fast," that it stopped "far" from the accident, and that the whistle of the train was blown either before or at the time of the accident. But all these people were inside or in the yards of houses a number of meters from the track when these events occurred. And it seems hardly likely that the train, which had stopped for water at a tank approximately 250 meters behind the bend, could have picked up any considerable speed by the time it reached the scene of the accident, which was only sixty meters beyond the bend. The witnesses for the defendant fixed the speed of the train at 18–20 kilometers per hour, which was a more accurate, and more reasonable, estimate under the circumstances than that made by people who, sitting in their houses adjacent to the tracks, vaguely called its pace "fast."

But, apart from the issues of the speed of the train was the alleged failure of the defendant to blow his whistle as charged in the bill of particulars, and assuming that the defendant was operating the train at a fast rate of speed and that he did not blow the whistle soon enough, all the circumstances of this case, as brought out by witnesses of the

government, compel the conclusion that these alleged acts of the defendant were not the proximate cause of the accident; but that, on the contrary, the death of the decedent was caused exclusively by her own negligence.

In *People* v. *Guadalupe,* 62 P.R.R. 251, we said that "the rule is well established that 'A homicide caused by the culpable negligence of the defendant is manslaughter, whether the deceased's failure to use due care contributed to the accident or not.' Warren on Homicide, § 121, p. 546. Contributory negligence, in short, is not a defense as such against a criminal charge of negligent homicide. *The People* v. *Francis,* 19 P.R.R. 659; *Biscamp* v. *State,* 154 S.W. (2d) 466 (Texas, 1941); *Click* v. *State,* 164 S. W. (2d) 664 (Texas, 1942); *State* v. *Leopold,* 147 Atl. 118 (Conn., 1929). As pointed out in *The People* v. *Francis, supra,* the negligence of the victim would exculpate the defendant from criminal liability *only if the negligence of the former were the sole cause of his death.*" (Italics ours.)

Here the decedent was a 58-year-old woman who was carrying a heavy can of water on her head. It is undisputed that she had a clear view of a train 60 meters away which was making so much noise that some of the witnesses for the government said it could be "felt." As the testimony indicated that she was not deaf, she undoubtedly heard the train, as all the other bystanders did. But she persisted in crossing the tracks in the path of the train, and was struck down and killed. The conclusion is therefore irresistible that, with the can on her head, she was unable to move her head completely to the right, and thereby see how perilous it was for her to attempt to cross at that time. Instead, she apparently undertook to gauge the distance of the train from the crossing solely by hearing, and made a bad guess. In the final analysis, her negligence in only listening, and not looking, was the sole and proximate cause of the accident. See *People* v. *Rodríguez,* 47 P.R.R. 565.

The view we take of the evidence of the *Fiscal* makes it unnecessary to examine the other errors assigned by the defendant.

The judgment of the district court will be reversed, and another judgment entered acquitting the defendant.